# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **DANIELLE W.,** | ) | |
| **individually and as parent and** | ) | |
| **next friend of K.W., a minor,** | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | |
| | ) | |
| **THE AUTAUGA COUNTY** | ) | |
| **BOARD OF EDUCATION,** | ) | |
| **an agency of the State of Alabama** | ) | |
| | ) | |
| Defendant | ) | |

## COMPLAINT

## I.   INTRODUCTION

This is a civil action in the nature of an appeal, brought pursuant to the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, 34

C.F.R. Part 300, and Ala. Admin. Code § 290-8-9-.08(9)(c), seeking judicial

review of the legal and factual determinations made by the Due Process Hearing

Officer in Alabama State Department of Education, Special Education Division

Case No. 25-77.

1

This case concerns whether a school district may place a student with autism and significant executive functioning deficits into a largely self-directed virtual learning program, and continue that placement despite clear evidence of academic failure, without providing the structured instruction and supports necessary for the student to access the curriculum and make appropriate educational progress.

After a multi-day administrative hearing, the IDEA Due Process Hearing Officer concluded that the District had not denied K.W. a free appropriate public education. Plaintiffs seek review of that decision pursuant to 20 U.S.C. § 1415(i)(2) and request that this Court reverse the administrative decision and award appropriate relief, including compensatory education.

## II.   **JURISDICTION AND VENUE**

1.   This Court has subject matter jurisdiction over this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2), and 28 U.S.C. § 1331.

2.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to this action occurred within the Autauga County School System, which is located within the Middle District of Alabama.

3.   Plaintiffs have exhausted all administrative remedies required under

the IDEA, including the due process hearing and administrative decision described herein, as required by 20 U.S.C. § 1415(l).

## III.   **PARTIES**

4.      Plaintiff Danielle W. ("Parent") is an adult resident of Montgomery, Alabama. She brings this action individually and in her representative capacity as the parent and next friend of Plaintiff K.W. ("Student"), who is 18 years old and, under Alabama law, remains a minor until the age of nineteen. Ala. Code § 26-1-1. At all times relevant to this action, K.W. was enrolled as a student within the Autauga County School System pursuant to an approved non-resident transfer granted to the children of District employees.

5.      K.W. is a student with a disability as that term is defined by the Individuals with Disabilities Education Act ("IDEA"). At all times relevant to this action, K.W. was eligible for special education and related services under the IDEA within the Autauga County School System under the disability category of Autism. K.W.'s autism significantly affects his attention, executive functioning, and ability to function in the educational setting.

6.      Defendant Autauga County Board of Education ("the District") is the local educational agency responsible for operating the Autauga County School System and for providing special education and related services to eligible students

3

within the district. The District receives federal funds and is subject to the requirements of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*.

## IV.  FACTS AND PROCEDURAL HISTORY

### A.  K.W.'s Disability and Educational Needs

7.  K.W. is a student with autism whose disability significantly affects his ability to sustain attention, organize tasks, initiate work, and complete assignments in the school setting.

8.  As a younger student, K.W. received special education services under the IDEA. During elementary school, he had an Individualized Education Program ("IEP") and a Behavior Intervention Plan designed to address the impact of his autism on his education.

9.  After attending private school for several years, K.W. enrolled in Autauga County Schools at the beginning of the 2024–2025 school year as an eleventh-grade student.

10.  From the beginning of the school year, teachers observed that K.W. struggled to sustain attention and remain engaged in academic tasks. Teachers consistently reported that K.W. was easily distracted and frequently off task during class. He often became preoccupied with his cellular phone and had difficulty

maintaining focus long enough to complete assignments.

11.    Teachers also reported that K.W. frequently failed to complete classwork and did not turn in assignments. These difficulties were not isolated incidents but reflected an ongoing pattern of behavior that interfered with K.W.'s ability to participate effectively in his classes.

12.    K.W.'s difficulty sustaining attention and completing work was particularly significant because several of his courses required independent work through a virtual learning platform. These courses required students to initiate assignments on their own, manage their time independently, and request help when needed.

13.    K.W. required additional structure, supervision, and direct instructional support in order to remain engaged in academic work and complete assigned tasks.

14.    K.W. 's difficulties with attention, task initiation, and work completion created significant barriers to his ability to make academic progress without specialized instruction and appropriate educational supports.

**B.    The District's Evaluation of K.W.**

15.    During the first semester of the 2024–2025 school year, K.W. began receiving failing grades in multiple classes, including virtual courses and Algebra

II with Statistics. After learning that he was failing, the Parent requested that the District evaluate him for special education services.

16. In December 2024, the District determined that K.W. was eligible for special education services under the disability category of Autism. The evaluation included teacher reports, classroom observations, and academic testing.

17. Teachers consistently reported that K.W. struggled to sustain attention, became distracted by his cellular phone, and frequently failed to complete or submit classwork. Classroom observations similarly documented that K.W. spent significant portions of instructional time off task and disengaged from academic work.

18. The District's academic testing revealed a substantial discrepancy between K.W.'s grade placement and his math performance. Although he was enrolled in the eleventh grade and assigned coursework in Algebra II with Statistics, the District's testing showed that he was functioning at approximately a fourth-grade level in mathematics. This finding reflected a significant gap between K.W.'s foundational math skills and the coursework he was expected to complete.

19. At the time of the evaluation, several of K.W.'s courses were being delivered through the ACCESS virtual learning platform, which required students to independently log in, complete assignments, and request assistance when

needed. These features of the ACCESS model placed substantial demands on the same executive functioning skills that the District's evaluation and teacher reports showed K.W. lacked.

### C.    The District's Knowledge of K.W.'s Educational Needs

20.    Through its evaluation process and teacher reports, the District possessed detailed information regarding K.W.'s disability-related educational needs. Teachers consistently reported that K.W. struggled to sustain attention, became distracted by his cellular phone, and frequently failed to complete assignments. Classroom observations conducted as part of the evaluation similarly documented that K.W. spent significant portions of instructional time off task and disengaged from academic work.

21.    The District's testing also revealed substantial academic deficits. Although K.W. was enrolled as an eleventh-grade student and assigned coursework in Algebra II with Statistics, the District's evaluation showed that he was functioning at approximately a fourth-grade level in mathematics. This finding reflected a significant gap between K.W.'s foundational math skills and the coursework he was expected to complete.

22.    Before developing K.W.'s IEP, the District possessed detailed information regarding his need for structured instruction, individualized academic

intervention, and supports addressing his attention and executive functioning difficulties.

**D.     Development of the January 2025 IEP**

23.     In January 2025, the District convened an Individualized Education Program ("IEP") Team meeting to develop K.W.'s IEP.

24.     In developing the January 2025 IEP, the Team did not incorporate the District's recent evaluation data showing severe math deficits and significant executive functioning needs. Instead, the Team relied on achievement information from K.W.'s prior private school and on transition interest questionnaires. The Team did not discuss alternative placements within the District, the appropriateness of continued ACCESS coursework for a student with K.W.'s documented needs, or supports addressing the time-management and organizational difficulties the Parent raised at the meeting.

25.     Despite the District's evaluation findings regarding K.W.'s academic deficits and executive functioning difficulties, the IEP Team did not meaningfully address whether continued participation in the ACCESS virtual learning platform was appropriate for K.W. At the time, several of K.W.'s courses were being delivered through ACCESS due to a shortage of teachers. The Team did not meaningfully discuss whether this largely self-directed virtual program was

appropriate for a student with K.W.'s documented difficulties sustaining attention, initiating tasks, and completing assignments.

26. The IEP developed by the District provided limited special education services. The IEP provided approximately forty-five minutes per week of special education support divided between reading and mathematics. The services were described primarily as monitoring K.W.'s academic progress and assisting him as needed.

27. The IEP did not provide direct, systematic instruction designed to address the significant math deficits identified in the District's evaluation. The IEP also did not include a Behavior Intervention Plan or other structured behavioral supports despite teacher reports and evaluation observations documenting that K.W.'s off-task behavior and difficulty sustaining attention interfered with his ability to complete schoolwork.

28. The lack of individualization in the IEP was further reflected in the goals themselves. Several of the goals were drawn directly from general eleventh-grade academic standards rather than being tailored to K.W.'s documented present levels of performance. At least one goal contained the name of another student. This error in the written IEP further established that the goals were not specifically drafted to address K.W.'s individual educational needs.

9

29.     Although the IEP included goals related to attendance and transition, it did not provide services specifically designed to address absenteeism, organization, time management, or meaningful transition planning.

**E.      K.W.'s Continued Academic Struggles**

30.     Following the development of the January 2025 IEP, K.W. continued to struggle academically.

31.     During the second semester of the 2024–2025 school year, K.W. attended Career Technical Education live classes for approximately half of the school day with other eleventh-grade students. During the remainder of the day, he attended a live History class in addition to his virtual coursework.

32.     One of those virtual courses was Environmental Science, which was delivered through the ACCESS virtual learning platform. As with other ACCESS courses, the class required students to independently log into the system, review instructional material, complete assignments, and track their own progress.

33.     Because K.W. had failed Algebra II with Statistics and English during the first semester, he was also placed in credit recovery courses for those subjects. Those credit recovery courses were also delivered through the ACCESS online platform.

34.     As a result, K.W. was expected to complete Algebra II with Statistics

credit recovery through the self-directed virtual system, even though he had previously failed that class in a live teacher setting and the District's evaluation had determined that he was functioning at approximately a fourth-grade level in mathematics.

35.     K.W. did not receive direct, systematic math instruction as part of these credit recovery courses.

36.     K.W. was permitted to work on credit recovery during the school day and also attended credit recovery one day each week after school. The Parent paid $100 for K.W. to participate in the credit recovery program.

37.     K.W. continued to struggle with the ACCESS coursework and had difficulty completing assignments. The District did not reconvene the IEP Team to review K.W.'s lack of progress, revise his educational program, or add supports addressing the reasons he was not making progress.

38.     K.W. also did not receive direct, systematic reading or math instruction through his IEP to address foundational deficits. The Parent did not receive progress reports regarding K.W.'s progress toward his IEP goals, and neither the Parent nor K.W.'s teachers were provided direct access to real-time ACCESS progress data.

39.     During the spring semester, the special education teacher assigned to

K.W. left her position with the District. For a period of several weeks thereafter, K.W. did not have a special education teacher assigned to provide services under his IEP.

40.    A substitute teacher later assumed responsibility. The substitute teacher was not a certified math teacher and was not a District-employed special education teacher. She did not provide direct specialized instruction to K.W.

41.    District personnel largely attributed K.W.'s continued academic difficulties to a lack of motivation rather than resulting from his disability.

42.    The District knew that K.W.'s autism significantly affected his attention and executive functioning, that teachers consistently reported he struggled to remain on task and complete assignments, and that its own evaluation showed he was functioning at approximately a fourth-grade level in mathematics as an eleventh-grade student.

43.    By the end of the school year, K.W. had not completed enough work to pass credit recovery English and Math and only narrowly passed Environmental Science.

**F.    <u>The Administrative Due Process Proceedings</u>**

44.    On May 2, 2025, Plaintiffs filed a due process complaint pursuant to the IDEA alleging that the District had denied K.W. a free appropriate public

education during the 2024–2025 school year.

45. The due process hearing was conducted before an Alabama IDEA Due Process Hearing Officer over multiple hearing dates in August, September, and October 2025.

46. During the hearing, the parties presented testimony and documentary evidence regarding K.W.'s disability-related needs, the District's evaluation and development of his IEP, the structure of the ACCESS virtual program, and the services provided to K.W. during the 2024–2025 school year.

47. Evidence presented during the hearing included testimony from teachers, administrators, and other District personnel regarding K.W.'s academic performance and the educational services provided to him.

48. Prior to the hearing, Plaintiff requested K.W.'s educational records from the District. The District did not produce a complete set of records in advance of the hearing.

49. On the first day of the hearing, one of the District's witnesses appeared with a substantial number of additional educational records that had not previously been produced. As a result, the hearing proceedings were interrupted and continued in order to allow the parties to review the newly produced records.

50. Additional records were produced by the District during later stages of

the hearing.

51.    During the hearing, testimony also addressed the District's handling of K.W.'s special education records. Evidence was presented that a District employee had circulated a message to multiple District staff members who were not involved in K.W. 's education programing asking where K.W.'s special education file should be sent.

52.    The administrative hearing concluded after multiple days of testimony and presentation of documentary evidence.

### G.    The Hearing Officer's Decision

53.    On January 26, 2026, the Hearing Officer issued a written decision concluding that the District had not denied K.W. a free appropriate public education during the 2024–2025 school year.

54.    The Hearing Officer determined that the District had developed and implemented an IEP reasonably calculated to enable K.W. to make educational progress and that the District's use of virtual coursework did not deny him access to a free appropriate public education.

55.    The Hearing Officer denied the relief requested in the due process complaint.

56.    Plaintiffs respectfully disagree with the Hearing Officer's conclusions

and bring this action pursuant to 20 U.S.C. § 1415(i)(2) seeking judicial review of that decision.

## V.    CAUSE OF ACTION–JUDICIAL REVIEW UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT (20 U.S.C. §1415(i)(2)

57.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

58.    The Individuals with Disabilities Education Act ("IDEA") guarantees children with disabilities the right to a free appropriate public education.

59.    The IDEA requires that a student's individualized education program be reasonably calculated to enable the child to make progress appropriate in light of the child's circumstances.

60.    Plaintiffs filed a due process complaint alleging that Defendant denied K.W. a free appropriate public education during the 2024–2025 school year, and the IDEA Due Process Hearing Officer subsequently issued a written decision concluding that the District had not denied K.W. a free appropriate public education.

61.    The Hearing Officer's decision is contrary to the evidence presented during the administrative hearing and inconsistent with the requirements of the IDEA.

15

62.     The administrative record demonstrates that Defendant failed to develop and implement an individualized education program reasonably calculated to enable K.W. to make progress appropriate in light of his circumstances.

63.     The administrative record further demonstrates that Defendant failed to provide appropriate specialized instruction, behavioral supports, and services addressing K.W.'s documented academic deficits and executive functioning needs.

64.     Pursuant to 20 U.S.C. § 1415(i)(2)(C), this Court has authority to review the administrative record, hear additional evidence if necessary, and grant appropriate relief.

## VI.     <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, plaintiffs respectfully request that this Court:

1.     Review the administrative proceedings pursuant to 20 U.S.C. § 1415(i)(2).

2.     Reverse the January 26, 2026 decision of the IDEA Due Process Hearing Officer.

3.     Declare that Defendant Autauga County Board of Education denied K.W. a free appropriate public education in violation of the Individuals with Disabilities Education Act.

4.     Award appropriate equitable relief, including compensatory education

services designed to remedy the educational harm caused by the denial of a free appropriate public education, with such services to be delivered by qualified providers of Plaintiffs' choosing.

5.    Permit the parties to present additional evidence and argument regarding the nature and amount of compensatory education necessary to remedy the denial of a free appropriate public education, including whether reimbursement for private educational services is appropriate.

6.    Award plaintiffs' reasonable attorney's fees and costs pursuant to 20 U.S.C. § 1415(i)(3).

7.    Grant such other and further relief as the Court deems just and appropriate including compensatory education, reimbursement, and other equitable relief.

RESPECTFULLY SUBMITTED, this the 17th day of March, 2026.

Gina S. Lowe (ASB-1440-N77L)
Attorney for Plaintiffs

**The Gallini Group, L.L.C.**
One Perimeter Park South, Suite 100N
Birmingham, Alabama  35243
205-352-8908
ginalowe@thegallinigroup.com

17